## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

**COUNTRY CLUB CORNERS OFFICE PARK NOS. 4 & 5 ASSOCIATION**, a Colorado non-profit corporation,

     Plaintiff,

v.

**THE TRAVELERS INDEMNITY COMPANY OF AMERICA**, a Connecticut corporation,


     Defendant.

---

### COMPLAINT AND JURY DEMAND

---

COMES NOW Plaintiff Country Club Corners Office Park Nos. 4 & 5 Association ("Plaintiff"), by and through its attorneys, Furtado Law PC, for its Complaint against the above-named Defendant the Travelers Indemnity Company of America, and states as follows:

### I.  NATURE OF THE ACTION

1. Plaintiff brings this action seeking economic and non-economic damages related to Defendant's breach of an insurance contract and statutory claims pursuant to C.R.S. §§10-3-1115 and 10-3-1116 arising from Defendant's unreasonable delay and denial of covered insurance benefits including recoverable depreciation.

## II.      PARTIES

2. County Club Corners Office Park Nos. 4 & 5 Association ("Plaintiff") is a Colorado non-profit corporation with its principal place of business at 1710 East Pikes Peak Avenue, #200, Colorado Springs, CO 80909.

3. The Travelers Indemnity Company of America ("Defendant") is a foreign corporation with its principal place of business located in Connecticut and is authorized to do business in Colorado.

## III. JURISDICTION AND VENUE

4. Jurisdiction is asserted pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 1391. The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. Venue is proper because Defendant's insurance policy was purchased in Colorado and was intended to provide coverage for a property located in Colorado.

## IV. GENERAL ALLEGATIONS

5. Plaintiff sought and obtained an insurance policy, Policy No. 680-391P8057-16-42 (hereinafter "the Policy"), from Defendant for nine condominiums located on Cheyenne Mountain Road and Broadmoor Valley Road in Colorado Springs, CO (hereinafter "the Property").

6. On or about July 28, 2016, a hailstorm hit Plaintiff's Property causing property damage.

2

7. Upon information and belief, on or about October 2017, immediately after Plaintiff learned of its damages, Plaintiff reported its claim to Defendant.

8. On or about October 30, 2017, Defendant drafted an estimate for Plaintiff's Property repairs with a replacement cost value of $379,604.99 (actual cash value of $219,237.72). Upon information and belief, the estimate did not include general contractor overhead and profit even though three or more trades were involved and it was reasonably foreseeable that Plaintiff would hire a general contractor on the claim to oversee the repairs. Upon information and belief, Defendant's continued failure to pay for general contractor overhead and profit is evidence of unreasonable denial of covered benefits under the Policy.

9. On or about November 2, 2017, Defendant's adjuster Casey Kucera sent Plaintiff a letter advising Plaintiff of Defendant's payment on the claim of $109,093.26 ($379,604.99 minus depreciation of $160,367.27 minus the deductible of $110,144.46).

10. On or about March 20, 2018, Plaintiff hired Scott Benglen with Claim Solutions, LLC as its public adjuster on the claim.

11. On or about May 11, 2018, Defendant's adjuster Kaycee Bell drafted an estimate for Plaintiff's Property repairs with a replacement cost value of $516,950.41 (actual cash value of $310,662.94).

12. On or about May 15, 2018, Ms. Bell sent Mr. Benglen a letter advising Plaintiff of its current payment on the claim of $91,425.22 ($516,613.35 minus depreciation

of \$205,951.41 minus the deductible of \$110,144.46 minus prior payments of \$109,093.26).

13. On or about May 22, 2018, Mr. Benglen emailed Ms. Bell that he believed Defendant owed general contractor overhead and profit on the claim due to both the number of different trades on the claim and the coordination required for those trades. Mr. Benglen also listed out the trades as follows: roofing, gutters, painting, HVAC, windows/screens and OSHA safety requirements.

14. On or about May 22, 2018, Ms. Bell responded that the number of trades does not determine whether general contractor overhead and profit is owed because Defendant determined that a general contractor was not needed on the claim to coordinate the trades involved on the claim. Ms. Bell also stated that Defendant adjusts each claim differently and general contractor overhead and profit is paid differently on each claim. Finally, Ms. Bell stated that Defendant's current estimate allows for additional costs of a supervisor onsite during repairs.

15. Upon information and belief, industry standard is that general contractor overhead and profit is owed whenever there are three or more trades involved on a claim and/or it is reasonably foreseeable that an insured would hire a general contractor on a claim. Upon information and belief, general contractor overhead and profit is payable on an actual cash value basis and Defendant owed general contractor overhead and profit on the claim in its initial estimate from October 2017.

16. Upon information and belief, Ms. Bell's denial of this portion of Plaintiff's claim is also unreasonable because insurers have a duty to adjust claims using the same industry standard.  Ms. Bell's denial is also unreasonable because there is no policy exclusion for payment of both general contractor overhead and profit and supervisory hours in the same estimate.

17. On or about May 22, 2018, Ms. Bell also noted in a separate email that Defendant would not cover the cost of OSHA fall protection requirements because she considered such cost as only a cost for the contractor. Upon information and belief, Plaintiff's Policy includes coverage for the increased cost of construction for complying with code requirements and Defendant incorrectly classified OSHA requirements as a cost not covered under the Policy.

18. Upon information and belief, the cost owed for compliance with OSHA safety requirements on this job is $11,191.17 ($9,325.98 plus 10% overhead and 10% profit).

19. On or about June 15, 2018, Ms. Bell drafted Defendant's third estimate of covered repairs from the date of loss with a replacement cost value of $522,863.35 (actual cash value of $314,412.94). Upon information and belief, the covered benefit for overhead and profit on this estimate that Defendant failed to pay for excluding the above OSHA safety requirements is $104,572.67 (20% of $522,863.35).

20. Upon information and belief, Plaintiff has not completed the work at Plaintiff's Property related to the date of loss damages due to Defendant's unreasonable

adjustment of the claim and Plaintiff is still owed recoverable depreciation of $208,450.41 on Defendant's final estimate amount.

21. Although Defendant had the necessary documentation during the claim process to identify the proper scope of repairs, Defendant unreasonably delayed and denied covered benefits by failing to pay OSHA safety costs and general contractor overhead and profit.

22. As a consequence of Defendant's conduct in unreasonably delaying and denying Plaintiff's claims for benefits due and owing under the Policy, Plaintiff has incurred and continues to incur damages.

## V.    FIRST CLAIM FOR RELIEF
(*Breach of Contract*)

23. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

24. The Policy creates a contract of insurance.

25. By its actions, as described above, Defendant breached the contract of insurance by failing to consider all relevant information submitted by Plaintiff on the claim and failing to pay covered benefits under the Policy including OSHA safety line items, general contractor overhead and profit and recoverable depreciation.

26. Without proper adjustment of the claim, Plaintiff cannot pay its contractor to finish repairs so that can Plaintiff can make a claim for recoverable depreciation.

27. As a direct and proximate result of said breach, the Plaintiff is entitled to damages in an amount to be determined at trial.

## VI.    SECOND CLAIM FOR RELIEF
*(Violation of C.R.S. §10-3-1115 and Relief Pursuant to §10-3-1116)*

28. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

29. C.R.S. §10-3-1115 forbids an insurer from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

30. Plaintiff is a first-party claimant under C.R.S. §10-3-1115.

31. Defendant has denied the Plaintiff's claim without a reasonable basis within the meaning of C.R.S. §10-3-1115.

32. C.R.S. §10-3-1116 provides that a first-party claimant whose claim has been unreasonably delayed by an insurer may bring an action in Colorado district court to recover reasonable attorneys' fees and court costs and two times the covered benefit.

33. Due to Defendant's actions, as described above, violate C.R.S. §10-3-1115, Plaintiff brings this claim to recover its reasonable attorneys' fees and court costs and two times the covered benefit, as allowed under C.R.S. §10-3-1116.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks that this Court enter judgment in its favor and against Defendant on its Claims for Relief as follows:

1.    All unpaid covered benefits owed under the Policy;

2.    Two times the amount of all covered benefits under the Policy;

3.    Costs, expert witness fees, and attorneys' fees per statute incurred in prosecuting its claims;

4.     Pre- and post-judgment interest; and

5.     For such other and further relief as this Court may deem just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS**

Respectfully submitted this 19th day of July 2018.

FURTADO LAW PC

*/s/ Nathanael Archuleta*
David Furtado, Esq.
Nathanael Archuleta, Esq.
Katherine Goodrich, Esq.
Furtado Law PC
3773 Cherry Creek North Drive,
Ste. 755
Denver, CO 80209
Telephone: (303) 755-2929
Email:          Dfurtado@furtadolaw.com
                    Nathanael@furtadolaw.com
                    katie@furtadolaw.com
Attorneys for Plaintiff